The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good afternoon, counsel. We'll call the next case of 4-210539, Jalen Bones v. City of Bloomington. If counsel for the appellant could please state your name for the record. Garrett Brown on behalf of the appellant. Thank you, Mr. Brown. And counsel for the appellee, if you could please state your name for the record. James Van Reden for the appellee. Counsel for the appellant, you may proceed. Thank you. May it please the court and counsel, again, my name is Garrett Brown and I represent the plaintiff appellate Jalen Bones. In this case, the plaintiff was struck by a driver who was fleeing from members of the Bloomington Police Department and he, as a result, sustained severe injuries. Now, the issue properly before this court is whether the driver was an escaped prisoner at the time he struck plaintiff. If he was an escaped prisoner, then the defendant is entitled to absolute immunity under section 4-106 of the Tort Immunity Act. Section 4-101 of the Tort Immunity Act defines prisoner as a person who had been held in custody. The circuit court, in this case, granted defendants motion for summary judgment when it concluded that the driver who struck plaintiff was an escaped prisoner and therefore shielded the defendant from liability. The circuit court reached this conclusion in two ways. First, it ruled that under the language of the Tort Immunity Act, there was no requirement that in order to be a prisoner that the person had to be, that there had to be a showing of physical imitation. That is, the circuit court ruled direct control over freedom of movement was not a requirement to establish that the driver had been held in custody. Secondly, the circuit court ruled that in the alternative, the undisputed facts established that there was sufficient evidence of physical imitation of the driver. Specifically, the circuit court ruled that, quote, the officer did not try, did try to stop the driver when he stood behind the car because it prevented it from going backwards. The circuit court reached this conclusion by relying upon the majority opinion in the Townsend v. Anderson case. In Townsend, the majority had held that a backseat passenger that had been, had been held in custody because the police there had subjected the car to a traffic stop, the two front seat occupants had been handcuffed, and the police officers had positioned themselves on both sides of the vehicle, and thus there was sufficient limitation on this freedom of movement. However, just over a month ago, the Illinois Supreme Court in the unanimous decision of Robinson v. The Village of Sauk Village expressly overruled the decision in Townsend. The Supreme Court ruled that the driver in Townsend who had been the backseat passenger had not been, quote, held in custody because even though the police had, had placed themselves on both sides of the vehicle, the officers had even grabbed at his arms as he drove away. The Supreme Court ruled this was insufficient to establish he had been held in custody because none of the officers present were able to control or restrain this freedom of movement. Now, as this is entirely an issue of statutory interpretation, the Supreme Court looked first at a playing language of the Tort Immunity Act, and they looked specifically at definitions of the word hold, and they know that hold is defined as, quote, to prevent from leaving or getting away or to maintain position. Thus, according to the Illinois Supreme Court, the phrase held in custody, I quote, plainly requires some direct restriction or control of the person's freedom of movement to a particular place. Likewise, in Robinson, the Supreme Court held that the driver there was never directly limited or controlled by police officers, even though they had exited their vehicles, pointed their weapons at the driver, and yelled orders at him to get out of the car. The Supreme Court ruled that given those facts, the freedom of movement was never directly controlled or limited to a particular place because after being confronted by the officers in this way, he simply drove away. So can I ask a question? Yes, Your Honor. And I'm not trying to, to short circuit your argument at all. I'm just kind of wondering what you think about the fact that it would look to me like the city has pretty much conceded the application of Robinson, and instead is putting greater weight based on their supplemental brief to the three new statutory issues that were never raised in the trial court. Now you address those fairly fully in your reply brief, but they've raised them again in their supplemental pleading. And honestly, I'd be interested in more to hear about that issue because I, and obviously my colleagues will ask whatever questions about whatever issues they appropriate. I'm just kind of interested in finding out what you think about this claim that, well, okay, we concede Robinson applies as to 4106, but we've got these other three that even though they weren't raised, you can still decide the case based on these issues. Certainly. I'm, I'm happy to move it along. I do agree with the, Your Honor, that it does and so if that's the court's preference, I can certainly move on to the new arguments raised for the first time on appeal. Now, again, as the court has noted, and I just noted, the defendant raised several new arguments for the first time on appeal citing essentially different sections of the Tort Immunity Act. Now, it's important here to keep in mind the widely acknowledged rule on appeals that's nearly universal as far as I'm aware that new arguments raised for the first time on appeal are generally not considered. And there's a lot of reasons for that. And that's, and again, this court itself has long recognized that proposition. And the rule isn't just there for convenience of the court, I imagine. There are real good reasons behind it that have been recognized over time. But there are very real reasons to apply that rule in this case. Because the defendant's failure to raise these arguments in the circuit court deprived plaintiff of notice effectively of what evidence and arguments to present to the circuit court and include in the record. The, again, the defendant's motion for summary judgment was based entirely on escaping prisoner immunity. So, you know, in light of that, the circuit court entered an agreed order that stayed discovery pending ruling on the defendant's motion for summary judgment. And as a result, discovering this matter was never completed. For example, I'll represent to the court that, you know, there are two eyewitnesses who gave statements to police in the aftermath of the incident. Yet those two eyewitnesses who gave statements have not yet been deposed. Additionally, plaintiff did not include in the record depositions related to the investigation conducted by the police department that conducted a detailed analysis of the drivers that struck the plaintiff's actions, the speed of travel in the moments before and at the point of impact. Additionally, there are further videos that show the actions of police officers during the chase, the location of squad cars at the time the driver was struck. I mean, at the time the plaintiff was struck by the driver. And there's even a video that shows nearly all of the collision between the driver and the plaintiff. Moreover, expert discovery had not yet begun in this case before discovered with stayed. A review of many of the decisions that talk about police pursuit cases is common in this type of litigation to rely upon expert witnesses to opine on the actions of police. Many appellate decisions point to the testimony of a plaintiff's expert as a basis for denying summary judgment on the issues of willful and wanton conduct and proximate cause. Therefore, it is improper and fundamentally unfair for the defendant to request that this discovery is not yet finished and there's not yet a complete record upon which to base a decision. Now, in the defendant's supplemental brief, it argued that, well, if the court doesn't address these arguments now, then it's just going to file another appeal later. Even if the court were to adopt that assumption as true, at least then the court would have the benefit of a complete record upon which to base this decision. I would submit that this court should not sacrifice the ability to make a fully informed decision for the sake of some theoretical efficiency. Therefore, I would submit that the court should refuse to consider the merits of any of the new arguments raised for the first time in appeal, and none of them should be used to prevent this court from reversing the circuit court. Now, some of them have been addressed in the brief, some of these new have been addressed, some of them now. The pursuit part of this incident, the police pursuit, as I noted, is only a partial record, but even that partial record demonstrates that there is a factual dispute in this case as to whether even there was a pursuit. The officer that's primarily responsible for the pursuit, his name is Officer Parsley, and he specifically denied that he ever engaged in a pursuit in this incident. Now, video evidence shows that the fleeing car that eventually struck Plaintiff was traveling at a high rate of speed and Parsley pursued him without himself stopping at multiple intersections. He intermittently used his emergency lights when he was going through a residential neighborhood, and particularly near the end, they were activated more, but that residential neighborhood had a 30 mile per hour speed limit. The record demonstrates that Parsley was traveling as fast as 63 miles per hour through those residential neighborhoods in nearly the entire pursuit. He was over 50 miles per hour in a 30 mile per hour zone, and Parsley admitted that he observed the driver of the stolen vehicle going through multiple stop signs when he continued to pursue him at a high speed, and the pursuit lasted for more than two minutes. Now, although Parsley claims he was not engaged in a pursuit, the evidence shows that after the incident, he was specifically ordered by his superiors who looked at it to fill out what they call a pursuit form that is required by his police department's policy when police officers engage in pursuits, and Parsley testified that he filled out this pursuit form that is apparently now missing, and he claims that he does not know how he was able to fill out a pursuit form when he claims that a pursuit never happened. The records show that he was reprimanded for speeding during this incident and was instructed that the safety of himself and the public come before catching a stolen vehicle. Now, viewed in the light most favorable to the plaintiff, even this partial record would establish that Parsley had been engaged in a pursuit of the stolen vehicle. Now, that pursuit was itself a violation of the defendant's pursuit policy, and Parsley has effectively admitted as much. For example, the pursuit policy on its face requires the approval of a supervisor before engaging, and Parsley did not obtain any such approval. That policy also lists five items that a police officer is required to consider before initiating a pursuit, and Parsley did not follow this requirement. Ultimately, he admitted that there was not a reason under the policy to even initiate a pursuit. He admitted that it was well known to himself and other officers that once a car had been identified as stolen, the thieves quickly abandoned the vehicle. Again, there's no compelling need for him to pursue in this case. Now, defendants' new arguments in part argue that, well, there's an absence of evidence establishing Wolf and Watton conduct. However, I submit that there are several factors that in combination create jury question as to whether there was Wolf and Watton conduct in this case. Again, as I noted, there was no need to initiate a pursuit in this case. It was conducted at high speed and more than 30 miles per hour over the speed limit through a residential neighborhood, mostly without the use of emergency lights and a violation of police department policy. That is exactly the kind of police conduct that other courts have concluded is sufficient to create an issue of fact as to whether or not police engaged in Wolf and Watton conduct. In the briefs I cited to this court, the decisions of Winston v. City of Chicago and Freeman v. City of Chicago. In Freeman, the expert gave the opine and explained why the conduct in that case of the officer was, in fact, a pursuit despite the officer's denial because the police exceeded the speed limit, did not stop completely at intersections, and used his emergency lights intermittently. That is precisely what happened in this case. Therefore, the Freeman court concluded that very similar conduct as is present in this case provided the jury with a basis for concluding that there was Wolf and Watton conduct. Now, the other basis that defendant argues that there's an absence of proximate cause in this case. Again, I would point the court to the decision in Freeman. Again, the Freeman court stated that as is the case here, a fleeing driver is significantly exceeding a speed limit in a residential neighborhood and going through intersections without stopping. It is foreseeable that if the officer continued to pursue the driver, he would continue to drive recklessly speed and drive through intersections without stopping. As I noted earlier, there was no need for a high-speed pursuit in this case. Furthermore, like here, where there is a police pursuit policy in place, it demonstrates, according to Freeman, that it is foreseeable that failure to follow the policy will result in accidents causing great harm. Because the actions of a driver in this case were foreseeable, the conduct of the driver does not act as an intervening cause. Again, that was a holding in Freeman and, again, reaffirmed in the case of Winston v. City of Chicago. Accordingly, I submit that the court should reject the defendant's argument that there is insufficient evidence that defendant's police officers were a proximate cause of the plaintiff's injury in this case. And the final provision of the Tort Immunity Act raised by defendant is Section 4-102 of the Tort Immunity Act, which provides that it is immune from claims alleging a failure to prevent the mission of a crime or failing to apprehend a criminal. However, in this case, plaintiff does not claim that defendant's failure to apprehend the driver causes injuries. Likewise, plaintiff does not claim that a failure to prevent the driver's crimes cause the injuries. On the contrary, plaintiff's contention in this case is that the decision to engage in an unnecessary police pursuit of a driver fleeing in a dangerous manner against defendant's own policies and under circumstances exhibiting reckless disregard for plaintiff's safety caused his injuries. Accordingly, defendant's reliance on Section 4-102 is misplaced, so rejected. Therefore, again, the circuit court's ruling granting defendant's motion for summary judgment must be reversed. And unless the court has any questions, that would conclude my argument. All right. I see none. Thank you, counsel. Mr. Van Rieden. May it please the court. Counsel J.D. Van Rieden for the defendant appellee. Counsel and your honors are correct. Defendants are in the unfortunate position wherein the Illinois Supreme Court brought down a decision in Robinson, which we believe likely forecloses upon our Section 4-106 Tort Immunity Argument, which was granted at the circuit court level. For that reason, I will do just as counsel Brown did and jump into the additional arguments that were raised in the appellee brief. First, as a precedent. Mr. Van Rieden, can I ask you a question? Yes, your honor. Do you agree that these alternative bases that you're asserting that they were not raised before the trial court? I do, your honor. And were they raised in your that exact note? As this court well knows, the appellate court can affirm summary judgment on any grounds proper in the record, even if those grounds were not the basis of the motion for summary judgment being granted at the circuit court. And although it is true that a failure to raise an argument at the circuit court is a waiver of that argument upon appeal, that waiver is not upon the appellate court, but is rather upon the parties themselves, giving the appellate ability to still affirm a motion for summary judgment on other grounds. And so with that being said, I want to touch on just some of the very pertinent factual situations here. Before you get into those, counsel, can I ask you a question? Absolutely, your honor. Would you agree with the principle that the Tort Immunity Act is an affirmative defense that must be raised and pleaded or else it is forfeited? I would, your honor. Okay. Is it your position that as long as you raise one section of the Tort Immunity Act, that you can then raise any other section of the Tort Immunity Act? In the affirmative, whether it was raised at trial or not? Your honor, it was, the Tort Immunity Act was raised as an affirmative defense generally in affirmative defenses. And I will add that plaintiff's counsel did not motion to dismiss that. So it's our position by filing an affirmative defense based on the Tort Immunity Act generally that we've reserved and preserved our arguments under the Tort Immunity Act in its entirety. Okay. Would you agree that the record reflects that the sole issue that was being addressed by the summary judgment motion was 4106? I agree that that's what the sole issue of that judgment was. I will say that I believe that the record before the court now also contains, you know, the necessary facts, circumstances, and testimony and evidence to rule upon the alternative arguments. Did you secure an agreed order staying any further discovery pending in resolution of the summary judgment motion? Your honor, I'll have to be completely honest on that one. I do not recall, nor did I look it up in my record prior to this argument. I can't recall if had discussed a specific order staying discovery or if that was something that was mentioned by the circuit court at the time of the hearing. I simply cannot recall. Okay. And then counsel, before you get back to your place where you were at in your argument in regards to the affirmative defense, can you clarify you said that you did not specify in the affirmative defense particular sections of the Tort Immunity Act, just simply that you were raising the Tort Immunity Act in general? That's correct, your honor. And again, there was no motion to dismiss whether 2615 or otherwise filed that according to that affirmative defense. Well, does that bind us to consider that these separate sections that you're now asserting, just because you asserted in a document in a affirmative defense, the Tort Immunity Act in general, how does that constitute a plating, a valid affirmative defense when it doesn't specify the sections? I'm just very curious about that. Understood, your honor. I'm unaware of any precedent that would indicate otherwise. I know opposing counsel in his brief did cite a couple of cases, Heinrich and Reyes. I would argue that in reading those two cases, they require that the act to be pled. It doesn't say specific sections that's in Heinrich and in Reyes, the appellate court refused to address in that circumstance, a particular section that wasn't raised in the motion to dismiss, but did not, as far as I'm aware, specifically address that section not being raised in the affirmative defense. So to more specifically answer your question, your honor, I'm unaware of any precedent that says that simply asserting an affirmative defense under the Tort Immunity Act generally is insufficient. And at the trial court, there was no challenge to the affirmative defense by way of motion to dismiss. Well, there may not have been a challenge, but the focus of both sides was on 4106, wasn't it? At the summary judgment argument, yes, your honor. Right. Which as far as you got. Correct, your honor. Okay. Oh, I'm sorry. In the only, I think if I've got the language here correctly, your defense was that the defendant is entitled to immunity pursuant to one or more sections of the Tort Immunity Act, end quote. I think that's accurate, your honor. Okay. So there was not even a citation to 4106. Not in the affirmative defense. That is correct. Okay. But you do mention that only 106 in your motion for summary judgment. That is accurate. And then counsel, for further clarification, at any point, and not, I'm not asking you to confine your response to the affirmative defense that was pled at any point in the trial court, uh, were, uh, the following sections identified in any, uh, pleading or argument to dash one Oh nine, two dash two Oh two or four dash one Oh two. I do not believe so, your honor. So you acknowledge those are being raised or even, uh, uh, identified for the first time on appeal. I, I'm in the position where I must, your honor. That is accurate. Okay. Thank you. Absolutely. Um, I can understand where the court's concern is coming from. And I know that opposing counsel has raised that he's at a disadvantage in this situation. Um, with these arguments being raised for the first time at the appellate court, I understand that argument. I will add if this were raised in the motion for summary judgment, that plaintiff's counsel would have had the I'm here. We did raise those in our appellee brief, uh, given him the opportunity to respond in his, uh, reply brief as he did. And he now has the opportunity to be heard on those orally now, as he is here today. Um, so I do believe that because the alternative arguments, uh, there's sufficient evidence upon the record to rule upon them. And because it was raised with giving plaintiff an opportunity to respond within the reply and to orally argue today that he's not at a disadvantage, uh, that he would have, um, that he was, has claimed in the briefing in here today. Uh, and I believe that we're in a position to where all the facts are there, uh, to have these alternative arguments be ruled upon. And with that, I do want to get into just those specific facts that relate to those alternative arguments. In this case, uh, officer Parsley, if we're talking about the alternative arguments really was the individual, uh, whose acts or omissions are was a minor at the time. I'll call him DA. Uh, when DA fled from the scene of the traffic stop by officers Zimmerman, uh, officer Parsley was then radioed and arrived at that scene after DA had already left the scene. When he, when officer Parsley got there, uh, he surveyed the area and saw a vehicle well ahead. And the squad car video here is crucial. Uh, the squad car video shows, uh, his speeds, the times, uh, what he could see from his vehicle, whether or not his lights and includes all the information needed there to see what his acts were. When he got to the scene, uh, he could see a vehicle some blocks ahead that he thought may not have the lights on. Uh, he was unsure if that was the fleeing vehicle or not. From there, he set out to locate the fleeing vehicle. Now it's true. And the squad car video will show this, that while he was doing so, uh, he did reach speeds that were in excess of the speed limit there. Um, but when doing so he was not directly in pursuit of the fleeing vehicle NDA at no point is he directly behind that vehicle traveling in excess of a speed limit, pushing that vehicle to itself, uh, try to flee or to go faster. So why aren't those material facts sufficient to defeat a possible summary judgment motion, whether those facts are sufficient in and of themselves to constitute an affirmative defense. Aren't those the types of facts that are normally raised and argued in these police pursuit cases that are found to be questions of fact for the jury. Your honor, I believe there's a key difference with the facts of this case when in comparison to, I believe it's the Winston and Freeman cases, which were cited by Mr. Brown. And that key differences in those cases, in the cases that are similar to them, the police were in direct pursuit of the fleeing individual. They were behind the fleeing individual. All right. That kind of proves my point that what constitutes direct pursuit. That that's a fact question, isn't it? Hey, judge, it's our arguments that in viewing the squad car video in this case, that it is clearly not a pursuit. You're going to say, you're trying to say that as a matter of law, the court would have to conclude that was not pursued. And that sounds to me like a pretty classic jury question. Is that a direct pursuit or not? In our argument, judge, is that when we're talking willful and wanton, when we're talking approximate cause, yes, those are usually issues of fact for the jury. But when there is evidence such that no reasonable juror could come to a differing conclusion, then it is appropriate to make that decision in law. And I think with the squad car video, it is our argument that that especially with all the information that it includes is decisive that this was not a pursuit and that he was never directly behind this individual following them for any extended period of time, traveling at speeds that would have pushed that individual to travel faster, drive erratically, or eventually have a collision as occurred in this case. Well, when you toss in the facts that his supervisor told him he had to fill out a pursuit form, which is now missing that fact also, which couldn't be brought to the attention of the jury. I really like. I'm sorry. Well, I would really like to address that. So the pursuit form was filled out in an abundance of a caution. There was this event that happened. The pursuit form was then filled out. We have actually deposed the chain of command and the members of I don't know all of them, at least two members of the review board for that pursuit form. They investigated it. They looked at the squad car video. They spoke with Officer Parsley. The determination was that that was not a pursuit in accordance with the pursuit policy of the Bloomington Police Department. That's what the ultimate determination was. But he was reprimanded for speeding. He was reprimanded for speeding, which your honor, I would hazard occurred well before there was even a questionable pursuit because the fleeing vehicle was nowhere in sight at the time of that speeding. And he acknowledged that his what you call a non-pursuit was violative of Bloomington Police policy. I don't believe that he acknowledged that it was a pursuit in violation of the Bloomington Police Department policy. I believe that he did acknowledge that his speeding was in fact a violation that he was orally reprimanded for. Go ahead. And if we look at the squad car video, I think there's some additional important information there with the times. And so when Officer Parsley arrives at the scene, the squad car video shows 22, 31, 53. When the stolen fleeing vehicle is first seen on the squad car footage after that, the time shows 22, 32, 15. At that time, the vehicle is several blocks in front of Officer Parsley's car and takes a pretty immediate right turn again out of view of the car. His lights, his police lights are turned on at 22, 32, 35. Arguably, when you look at the video, that's when he first is a block or so behind the vehicle he's found at this point. After the lights are turned on, that fleeing vehicle goes over a up the hill. It's coming down and the line of sight is broken there. Seconds afterwards at 22, 32, 42, you see the stolen car swerve, which is to believe to be when it struck Mr. Bones, as that's the location where he was found on the road. So when we do some simple math and parse that all out from the time that Parsley got to the scene until the time of the collision with Mr. Bones, only 42 seconds passed. From the time the stolen car was first in view of Officer Parsley's car to the time of the collision, only 27 seconds passed. And from the time Parsley turned on his lights, that's really where I believe he was first arguably actually behind the fleeing vehicle in a position to maybe try to pull it over. When he flipped on his lights from that time until the collision, only seven seconds passed. And so with those circumstances, your honors, and when the squad car video, which is the crucial thing here, is viewed, it's completely without any chase, without any pursuit and without any evidence of willful and wanton conduct that would have had any involvement with pushing this individual to dangerous behaviors, DA. What we have in this case is a situation where the police are searching for and if every situation where the police are searching for someone inherently has enough facts to get something to a jury, I don't see how on willful and wanton, I don't see how a police officer does their job when they're searching for a wanted individual. This person likely knew the police were going to be searching for them because they had fled from a stop, but it's not a situation where they have the lights in their rear view and there was a pursuit ongoing. That's just not the situation that we have here. With the evidence that's on the record, I don't believe that there's any evidence to show willful and wanton conduct, which of course on a tort immunity claim is defined as showing actual or deliberate intention to cause harm, or if not intentional, shows an utter indifference. I don't think there's any facts when we look at this video and the testimony to where a reasonable juror could determine there was willful and wanton conduct. Moving on to our second argument, which is proximate cause. In this case, again, this all comes down to the same argument, essentially that there was not a pursuit that the officer was searching for DA and DA's vehicle, not actively pursuing him. We have a really similar case, which is the Nelson case. In that Nelson case, the police caught up to someone, pulled them over after a smash and grab. That individual then fled and eventually there was a collision. In that case, there was a significant pursuit by the officers. There, the court found that there was not evidence of proximate cause and that the police officers were merely an occurrence or part of the condition in relation to the criminal's consistent decisions to make criminal acts, which then led to this collision. That's really what we have here. Proximate cause at this point was DA's decision to operate a stolen car, to flee from a traffic stop and to continue to drive in a manner which was unsafe. And that's what led to this occurrence. It was not the act or omission of Officer Parsley specifically or any other Bloomington police officer. And again, that comes down to simply viewing the squad car footage, seeing that really he was trying to locate this individual, not chasing them. And he really only located him just mere a couple seconds before the collision occurred. And I don't believe that a reasonable juror could find that in that mere couple of seconds, there was more than one conduct or that there was conduct that acted as the proximate cause of this collision. Moving to the final point, I will agree. I know Plankton has essentially conceded in his reply brief that they're not trying to allege any liability based upon a failure to apprehend DA or to prevent DA's crimes. In so far as any of his allegations are interpreted as that, I would say that they are barred by Section 4-102. But with that concession from Plankton's counsel, I do not see it necessary to go any further as to that argument. With that, Your Honors, unless there are additional questions, I will rest. Thank you, counsel. I see none. Thank you, Ron. Your rebuttal. Thank you, Your Honor. Briefly, beginning of counsel's argument, you asked about the agreed order staying discovery. It is in the record at page C-158. Again, even in defendant's argument about them being entitled to summary judgment over this dispute over whether or not the department found that the officer had engaged in a pursuit. In making those arguments, defense counsel relies upon testimony of the asserts occurred that is not part of the record. Because again, it was not raised in the circuit court. I do not think it is proper to simply take counsel's word for something that is simply not in the record. Now, the counsel just referenced the Nelson decision from 1996. Again, I would point out that, and again, this is in the briefs, that the Nelson decision was specifically disavowed in the Freeman case. It is referenced in the Freeman decision found that it was no longer persuaded by the rationale of Nelson. Again, just by way of comparison, the Winston v. City of Chicago case, that pursuit lasted three blocks and 20 seconds. The court found there is an issue of fact here for a jury. In the Freeman case, that pursuit lasted less than two minutes and less than one mile. Importantly, in Freeman, there was expert testimony that given the actions of the police officer, despite his denial that he was engaged in a pursuit, the expert opined, look, given the actions of the police officer, compare that to the police policy, that his actions, despite his denials, his actions constituted a pursuit under that department's own policy. We have a very similar thing here. Although counsel claims he was merely searching, it's hard to get less safe searching through a residential neighborhood, going 63 miles per hour and blowing through intersections. That is by most common understanding of pursuit. That's what police officers do when they're pursuing people. They blow through intersections, they activate their lights, at least intermittently like in this case. The officer testified, well, I was just trying to get it to read his license plate. Again, I think that's not going to hold much water in front of a jury. The vehicle's license plate was not in dispute. Earlier in the incident, Officer Zimmerman had run it at least twice. This was not a legitimate explanation for the actions of given this procedural posture, the newly raised arguments and the Supreme Court's recent decision, I respectfully submit that circuit court's decision should be reversed and this matter remanded. Unless there are any other questions, I'll conclude my argument. I see none. Thank you, counsel. Court will take this matter under advisement. The court stands in recess.